# FREDERICK MAPES

## *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. CRIMINAL LAW—*technical objections not favored.* When the charge against a party in an indictment is so plainly stated that he may know how to make his defense, and the jury may readily understand the nature of the accusation, the trial ought to be conducted solely with a view to determine whether the accused is guilty or innocent. This court is not

Statement of the case.

inclined to regard with favor mere trivial objections interposed for no other purpose than to obstruct the administration of justice.

2. SPIRITUOUS LIQUOR—*indictment for selling to one in the habit of becoming intoxicated.* An indictment which charged that the defendant "on, etc., at, etc., intoxicating liquors to one C D, a person then in the habit of getting intoxicated, unlawfully did then and there sell, contrary to the form of the statute," etc., was *held* sufficient. It is not necessary to aver that the defendant knew of the habits of the person to whom the liquor was sold. The sale is made at the peril of the party selling.

3. SAME—*sufficiency and competency of proof.* On the trial of one for selling intoxicating liquor to a person in the habit of getting intoxicated, it is competent to prove by witnesses that they have frequently seen such person under the influence of intoxicating liquor; and proof that such person was in the habit of using such liquor intemperately, is sufficient proof that he is in the habit of getting intoxicated.

4. JURY—*challenge as to mode of drawing.* Where the office of county clerk was divided in a county, the fact that the person acting as county clerk for mere county matters, assisted in the drawing of a jury, instead of the clerk who attended to the business of the court in probate and other matters, was regarded as no ground for a challenge to the array, he being *de facto* a county clerk, and the objection was considered trivial.

5. OFFICER—*acts of, binding.* An officer *de facto* is one who has the reputation of being the officer he assumes to be, in the exercise of the functions of the office, and yet, in point of law, may not be entitled to the office. Until such an officer is in some lawful way adjudged to hold the office and perform its duties without authority of law, his acts must be regarded valid.

6. CIRCUIT COURT—*jurisdiction to try for misdemeanors.* Under the constitution, the circuit courts have original jurisdiction in all cases in "law and equity," and the legislature can not deprive them of the jurisdiction to try persons charged with misdemeanors. It may, however, confer concurrent jurisdiction of such matters upon county courts. Therefore, it is not error for the circuit court to refuse to certify a case of misdemeanor to the county court. As both courts have jurisdiction of such offenses, under the law of 1872 for increasing that of the county court, and the constitution, it follows that the first obtaining jurisdiction in a particular case, may retain it until it pronounces judgment.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

This was an indictment against Frederick Mapes for selling intoxicating liquor to one Bissel Rice, who, it was alleged, was in the habit of getting intoxicated.

The indictment, leaving out the formal parts, was as follows:

"1. That Frederick Mapes, on, etc., at, etc., intoxicating liquors to one Bissel Rice, a person then in the habit of getting intoxicated, unlawfully did then and there sell, contrary to the form of the statute," etc.

The court overruled a motion to certify the cause and papers to the county court for process and trial, and also a motion to quash the indictment. The defendant pleaded not guilty. On the trial the prosecution proved by Bissel Rice that he bought intoxicating liquor of the defendant, and by several other witnesses that they were acquainted with Rice, and the length of time they were so acquainted with him. The following question was asked the witnesses by the prosecution: "Have you ever seen, during that time, the witness Bissel Rice under the influence of intoxicating liquors?" The defendant objected to such question as irrelevant, incompetent, and as seeking an opinion from the witnesses upon a matter in which they were not shown to be experts, and because no sufficient foundation had been laid. The court overruled the objection. The witnesses testified in substance that they had frequently seen him under the influence of intoxicating liquors, or when they considered him so, some stating as often as once a week, and some that it was as often as he came to town. It was also proved by two or three witnesses that they had seen Rice drunk, one as many as a hundred times, he thought.

The jury found the defendant guilty, and the court overruled defendant's motion for a new trial, and rendered judgment on the verdict. The defendant brings the case here by writ of error.

Mr. N. C. Warner, and Mr. L. F. Warner, for the appellant.

Mr. James K. Edsall, Attorney General, and Mr. J. C. Garver, State's Attorney, for the People.

Mr. Justice Scott delivered the opinion of the Court:

The plaintiff in error was indicted for selling intoxicating liquors to a person alleged to be in the habit of getting intoxicated. On the trial he was found guilty, in the manner and form as charged, and the court pronounced judgment on the verdict.

Numerous errors are assigned, but it is not deemed necessary to comment on all of them severally. It is sufficient to say we have examined all the objections taken, and find that many of them are of the most technical character, and in nowise affect the merits of the case. If all the errors assigned could be sustained, the practice in our courts would become so complicated, it would be difficult, if at all possible, to procure a conviction in any case, that would stand. When the charge against a party is stated so plainly that he may know how to make his defense, and the jury may readily understand the nature of the accusation, the trial ought to be conducted solely with a view to determine whether the accused is guilty or innocent. We are not inclined to regard with favor mere trivial objections interposed for no other purpose than to obstruct the administration of the law.

The objection, the indictment is bad for the want of an allegation of a *scienter*, is disposed of in the case of *McCutcheon* v. *The People, post*, p. 601. That was an indictment for selling intoxicating liquors to a minor without a written order from either of his parents, guardian or family physician, under the first clause of the second section of the act of 1872, under the latter clause of which section the present prosecution was commenced. It was there declared it was not necessary to aver in the indictment a *scienter;* that it was sufficient if the proof showed, on the trial, defendant had sold intoxicating liquors to a person contrary to the provisions of the statute, and that it was immaterial whether he knew at the time the party to whom the sale was made was a minor. The licensee makes the sale at his peril. The reasoning in that case will apply

with equal force to the case at bar, and it is not necessary we should restate our views.

This cause was tried in the circuit court of Winnebago county, and it is insisted that court did not have jurisdiction. Prior to the commencement of the trial, defendant moved the court to cause the indictment to be certified to the county court, under the provisions of the act of 1872. This motion the court overruled, and proceeded to try the cause, against the objection of defendant. It is provided, by the third paragraph of the first section of the act to increase the jurisdiction of county courts, such courts shall have "exclusive jurisdiction in all criminal cases and misdemeanors where the punishment is not imprisonment in the penitentiary, or death." The constitution, however, confers original jurisdiction on circuit courts in all cases in "law and equity," and such appellate jurisdiction as is or may be provided by law. It also gives county courts a limited original jurisdiction, and "such other jurisdiction as may be provided for by general law."

No doubt, under these constitutional provisions it is competent for the General Assembly by general law to confer on county courts jurisdiction in all cases in "law or equity," but it is not perceived how it can deprive circuit courts of their original jurisdiction given by that instrument. Circuit courts can only exercise such appellate jurisdiction as may be given by law, and this may be the subject of regulation from time to time, as may be deemed expedient. But not so as to their original jurisdiction. If the legislature can deprive circuit courts of jurisdiction in one class of cases, the same power would enable it to take away all jurisdiction. It certainly possesses no power to abolish a court created by the constitution, or, what is practically the same thing, take away its original jurisdiction conferred by the provisions of that instrument. *Myers et al. v. The People*, 67 Ill. 503. Where it can be done, we prefer to so construe a law that it may not seem to be in conflict with the constitution, and we think the

reasonable construction of the act of 1872 is, that the General Assembly only intended to confer jurisdiction upon county courts in a certain class of cases enumerated, concurrently with circuit courts. Hence, either court would have jurisdiction, and the one that first obtained jurisdiction could retain it until it pronounced judgment.

It is claimed the jurors in attendance at the term of the circuit court at which plaintiff in error was tried, were not drawn in the manner prescribed in the act of 1872, in relation to jurors, and there was such irregularity as would constitute cause for challenge to the array.

The informality charged is, that the duties required by law to be performed by the county clerk in relation to the drawing of jurors, were not in fact performed by him, but by one Benjamin F. Lee.

By an act of the General Assembly, passed in 1855, the duties of the office of county clerk of Winnebago county were divided. It provided for the biennial appointment of a clerk by the board of supervisors, who was to be sworn, give bond, and perform all the duties required by law of the county clerk, except those arising under the 69th chapter R. S. 1845, and the laws and constitutional provisions that give county courts jurisdiction in law and probate matters.

Ever since that law was in force, the clerks appointed by the board of supervisors have performed all the duties pertaining to the office of county clerk, excluding those expressly excepted by its provisions. Lee was appointed to that office in 1869, and re-appointed in 1871, and during all that period has performed all the duties of county clerk under the act of 1855. After the passage of the Jury Act of 1872, he assumed to and did discharge the duties imposed by its terms upon the county clerk, up to the time of selecting the jury complained of.

Whether Lee was an officer *de jure* is not material for us to determine in this case. It is enough, for the purposes of this trial, that he was an officer *de facto*, and in possession of

the office, performing its duties. An officer *de facto* is said to be one who has the reputation of being the officer he assumes to be, in the exercise of the functions of the office, and yet is not a good officer in point of law. *The King* v. *Corporation of Bedford Level*, 6 East, 369.

Lee's right to exercise the duties of the office of county clerk had then never been questioned in any mode known to law for inquiring by what authority he assumed to hold the office. Until he is in some lawful way adjudged to hold the office and perform its duties without authority of law, his official acts must be regarded as valid. Any other rule would be most disastrous to the public interests. *Ex parte Strong*, 21 Ohio, 610; *The State* v. *Carrol*, 38 Conn. 449.

The error complained of is at most a trivial one, and it can hardly be insisted it worked any injury to the accused. It is not contended there was any misconduct in the preparation of the list from which the jurors were to be drawn. The names were regularly placed in the box, and the law requires the drawing to be done by the clerk of the court in which the jury is to serve, in the presence of the county clerk, after the box containing the names had been well shaken by him. What possible difference could it make in the result, whether the box containing the names was "well shaken" by La Monte or Lee? The drawing was, in fact, done in the room with La Monte, who is alleged to be the county clerk. Every duty enjoined by law was actually performed by Lee in the same room with La Monte, where he could see what was taking place. It does not appear that La Monte ever assumed to discharge any of the duties imposed by the law of 1872 in the selection of jurors. It seems to have been conceded by him it belonged to Lee to perform these duties. So slight an error in the selection of a jury, if it was, indeed, irregular, ought not to be ground for a challenge to the array, and a cause for a reversal of a judgment in all things else regular.

The case of *Ferris* v. *The People*, 35 N. Y. 125, was a case where the life of the prisoner was involved, and although it

34—69TH ILL.

was conceded that the most culpable irregularities existed in reference to the drawing of the additional panel of jurors ordered by the court, such as would subject the officers to punishment, yet it was held not to be a ground for a reversal of the judgment, for the reason the rights of defendant were not affected, and he was not prejudiced by the irregularities. So we may say, in this case, the accused has been given a fair trial in a court of competent jurisdiction, before an impartial jury, and that is all he has a right to expect or demand. The law guarantees such a trial to every man, no matter what his station in life, nor the character of the offense with which he is charged, and whenever that is secured to him, if punishment follows it must be attributed to his own guilty conduct in the commission of crime, from the consequences of which it is not in the power of the courts to relieve him.

The proof shows, beyond a reasonable doubt, Bissel Rice, to whom it is alleged the liquors were sold, was a person in the habit of getting intoxicated. The evidence offered to prove that fact was entirely competent, and the court committed no error in permitting it to go to the jury. We will indulge in no subtile distinctions as to the meaning of the words used in the statute. They are to be understood in their ordinary signification, and the jury will have no hesitation in coming to the conclusion that a person in the habit of using intoxicating liquors intemperately, is one "who is in the habit of getting intoxicated."

No material error appearing in the record, the judgment must be affirmed.                    *Judgment affirmed.*

Mr. JUSTICE WALKER and Mr. JUSTICE McALLISTER, dissenting: The court below refused to instruct the jury, on behalf of the accused, that, in order to convict, it was necessary that the accused knew that Rice was in the habit of getting intoxicated, but on the contrary, instructed that such knowledge was not necessary to be shown. This, we think, was error, upon the grounds stated in our dissent in the case of *McCutcheon* v. *The People, post,* p. 601.