## TIMOTHY NEALON AND JOHN McGONNIGAL
### v.
## THE PEOPLE OF THE STATE OF ILLINOIS.

*Practice—Indictments—Quashing of—Grand Jury.*

1.  A motion filed to correct the record, so as to show the method of completing panel of grand jurors, by a defendant, previously to pleading to an indictment, should be overruled where none of the grounds mentioned therein would have justified the court in quashing the indictment.

2.  A grand jury, when properly organized, meets and adjourns upon its own motion, without reference to the temporary adjournment of the court, and it may lawfully proceed in the performance of its duties whether the court is in session or not; but this right to remain in session will not extend beyond the final adjournment of the court for the term, but within such limits it will be governed by its own wishes, subject to the control that the court at all times has over it.

3.  A mere irregularity in drawing a jury is not sufficient cause to sustain a challenge to the array, unless the irregularity complained of is of such a character as would probably have produced a change in the panel, or presented a list of names to choose from, different from those which would be produced by a compliance with the law.

4.  In the case presented, this court holds as erroneous, the overruling of the challenge to the array of the petit jury, the county board having disregarded the provisions of Sec. 2, Chap. 78, R. S.

5.  When a case is called for trial, and the regular panel of twenty-four men is for any cause not full, the court may order it filled from the bystanders; but after the selection of the jury has begun and this number becomes reduced, so there are not twelve jurors to place in the box, the court should order only enough to be selected from the bystanders to keep twelve men in the box and need not keep the original panel of twenty-four full.

6.  The questions to be asked of jurors on their *voir dire*, and the time permitted to be occupied in examining jurors, is largely within the discretion of the court in a given case.

### [Opinion filed January 24, 1891.]

IN ERROR to the Circuit Court of Macon County; the Hon. E. P. VAIL, Judge, presiding.

Messrs. RUBENS & MOTT, JAMES J. FINN and D. HUTCHINSON, for plaintiffs in error.

Mr. I. R. MILLS, State's Attorney, for defendant in error.

CONGER, P. J.    Plaintiffs in error were indicted, tried and convicted for selling intoxicating liquor to minors. They bring the record to this court and assign numerous errors.

It appears that upon the convening of court but seventeen grand jurors answered, whereupon the court ordered the sheriff to summon from the body of the county six persons having the qualifications of grand jurors. That the sheriff summoned six persons from the bystanders, four of whom resided in the township of Decatur, and these six, with the seventeen originally summoned, constituted the grand jury that found the indictment upon which plaintiffs in error were tried.

Plaintiffs in error before pleading to the indictment filed a written motion, supported by affidavits, to correct the record, so as to show that the verbal order made by the court to the sheriff was to summon from the bystanders a sufficient number to complete the panel of grand jurors; and also to show that of the six selected, four were from Decatur township. This motion was by the court overruled, and we think properly.

"No indictment shall be quashed * * * by reason of the disqualification of any grand juror." Sec. 411, Criminal Code. None of the grounds mentioned in the motion would have justified the court in quashing the indictment, and hence it was not important that the record should have been corrected. Fletcher v. The People, 81 Ill. 116.

The second error assigned is that the court erred in not quashing the indictment.

It is urged that the court should have sustained the motion to quash, first, for the reasons set forth in the first assignment of error, and also for the further reason, that after the grand jury had been impaneled and commenced its work, there was an adjournment of the court for a few days, during which the judge was absent in another county holding court, and this fact, it is claimed by plaintiffs in error, suspended the functions of the grand jury, while the judge was so absent, and

all their proceedings during such absence were void. It will be observed that the adjournment was not for the term, but only temporary, such as occurs at the close of each day that the court may be in session, or for the Sabbath day, or any other occasion requiring an adjournment for some temporary purpose.

The grand jury when properly organized meets and adjourns upon its own motion, without reference to the temporary adjournment of the court, and it may lawfully proceed in the performance of its duties whether the court is in session or not.

This right to remain in session would not, of course, extend beyond the final adjournment of the court for the term, but within such limits it would be governed by its own wishes, subject to the control that the court at all times has over it.

It is next insisted that the court erred in overruling the challenge to the array of the petit jury.

In support of this motion affidavits were read showing the following state of facts in reference to the methods used for procuring the jury : At the meeting of the county board in July, 1889, the jury list was made up by each of the members presenting a list of names supposed to represent ten per cent of all the legal voters in the township or precinct represented by such member, all the names together numbering 957; that all these names were by the county clerk copied into a book kept for that purpose; that all of these names were then copied upon cards, one name on each card, and all said cards placed in a box, from which box the panel of thirty jurors required for the term was drawn. In thus proceeding, the board wholly omitted and disregarded the provisions of Sec. 2, of Chap. 78, entitled, "Jurors." This chapter provides in the first section that a list shall be made of not less than ten per cent of the legal voters, as seems to have been done in the present case.

The second section provides that the board shall from such list so prepared make a second list, by selecting from the first a number of names equal to one hundred for each trial term of the Circuit Court and other courts of record, except the

County Court, and in making this second or sub-list the board must take into consideration the following four qualifications, not required in making out the first or ten per cent list, viz., they must take such only as are:

*First.* Inhabitants of the town or precinct not exempt from serving on juries.

*Second.* Of the age of twenty-one years or upward, and under sixty years old.

*Third.* In the possession of their natural faculties, and not infirm or decrepit.

*Fourth.* Free from all legal exemptions, of fair character, of approved integrity, of sound judgment, well informed, and who understand the English language.

The third and fourth sections provide for the making of such list at other than the time fixed, and also for exemptions from jury duty.

The fifth section provides that the board shall check off from the ten per cent list the names of those selected to form the sub-list and the names upon such sub-list shall not be again selected as jurors until every person named upon the ten per cent list qualified to serve as a juror has been selected, or until the expiration of two years from the time of making the original or ten per cent list, when a new list shall be made.

At the expiration of two years all names undrawn in the box and also the names of those who have been drawn, but have not served upon a jury during the year for which they were selected, if qualified, should form part of the sub-list selected at that time for the ensuing year.

By the seventh section this sublist to be selected annually from the ten per cent list, furnishes the names to be written upon separate tickets and placed in a box, and from which juries are drawn as provided in section 8.

The Supreme Court has said, " that a mere irregularity in drawing the jury, where no positive injury is shown to have been done the accused, is not sufficient cause to sustain a challenge to the array." Wilhelm v. The People, 72 Ill. 471; Mapes v. The People, 69 Ill. 523.

It therefore becomes necessary to determine whether the failure by the county board to obey or notice the section requiring a second or sub-list to be prepared is such a mere irregularity as could reasonably be said to work no positive injury to plaintiffs in error. If the language above quoted from the Supreme Court means that in all cases an accused person, who has unsuccessfully challenged the array of jurors, must, before he can successfully assign error upon the action of the court in overruling his challenge, show that some positive injury has been done him by the failure or irregularity, then any of the provisions of the jury law might be violated, and the accused could not be heard to complain.

If a jury had been selected by the sheriff to try plaintiffs in error, entirely without and against law, it might be that those selected had all the qualifications required by law, were good men, and had given plaintiffs in error a fair and impartial trial, and therefore they could not complain.

We do not understand the Supreme Court to mean this, but that the irregularity complained of must be of such a character as would probably have produced a change in the panel, or presented a list of names to choose from different from those which would be produced by a compliance with the law. It is the right of an accused to have a jury selected in compliance with the law, and any substantial and material departure from the methods pointed out by the statute is certainly a wrong to him, of which he has a right to complain.

In the Mapes case, *supra*, the error complained of was that Lee, who was an officer *de jure*, shook the box previous to the drawing of the names of the jurors instead of the county clerk, and the court say : " What possible difference could it make in the result, whether the box containing the name was " well shaken " by Lamorte or Lee?

In the Wilhelm case, *supra*, the character of the irregularity does not appear from the opinion; it is only spoken of as one that would produce no positive injury to the accused.

The failure of the county board to select from the original or ten per cent list, the sub-list required by Sec. 2, was, we think, a substantial departure from the law which would work a positive injury to the accused.

The original list contains the names of voters without any reference to any of the qualifications of. jurors required by Sec. 2, except the first, *i. e.*, that they shall be inhabitants of the town or precinct.

In making the second or sub-list, the county board are required to exercise their judgment, and to use their personal knowledge of the men of their precinct, to present names of those *only* who are of the age of twenty-one years and under sixty, in the possession of their natural faculties, not infirm or decrepit, free from all legal exceptions, of fair character, approved integrity, sound judgment, well informed, and who understand the English language.

This sifting of the original list by the members of the county board is not a mere useless form, but an important duty they owe to the public, and one which they can not omit without materially lowering the character and intelligence of those composing the juries of the county.

The failure of the county board *to perform their duty*, in all human probability, presented to the accused in this case, an entirely different panel of jurors from those which should have been presented, had the law been complied with. It is almost impossible to suppose that thirty names drawn from a box containing the nine hundred and fifty-seven names on the original list would be identical with those drawn from a box containing the names only of the sub-list.

The omission to observe the provisions of section 2 has, therefore, resulted in the selection of the jury from an entirely different class of men than that intended by the law, and did, in all human probability, present to plaintiffs in error different individuals to choose a jury from than would have been presented had the law been complied with.

The true rule, we think, is laid down in Ferris v. The People, 35 N. Y. 129, where it is said: "The question arises whether any injury has resulted to the prisoner, or has he been prejudiced thereby. If we could see that by any possibility this neglect of duty on the part of these officers *could have changed the panel* or in any manner have produced a different result, we might hesitate whether the prisoner should have a new trial."

We are of the opinion that the Circuit Court erred in not sustaining the challenge to the array of petit jurors.

The fifth and sixth errors assigned are not well taken.

The questions to be asked of jurors on their *voir dire*, and the time permitted to be occupied in examining jurors, is largely within the discretion of the court. It is quite apparent, from an inspection of the record, that counsel for plaintiffs in error were captious and dilatory, and seemingly more desirous of asking unnecessary and flippant questions of jurors than of treating the court with respect and expediting the business.

We think the court was fully justified in its rulings upon these questions.

The fourth assignment of error, as we understand it, is, that when the selection of the jury was begun there were twenty-four jurors present, ready to answer; that after thirteen of these had been excused, leaving but eleven in the box, the court ordered the sheriff to summon one juror to fill the panel of twelve in the box; whereas plaintiffs in error insist that the full panel of twenty-four should have been kept full until the jury was completed. The action of the court in this respect was not erroneous.

By Sec. 12, of Chap. 78, R. S., it is provided that in case a jury shall be required for the trial of any cause before the panel is filled, it shall be filled from the bystanders. By the term panel, as here used, is meant twenty-four jurors.

But when in impaneling the jury, the number becomes reduced, so that there are not twelve men in the jury box, Sec. 13, of the same chapter, provides for filling the panel from the bystanders, and the word, panel, as used in this section, means a panel of twelve men.

In other words, when a case is called for trial, and the regular panel of twenty-four men, is, for any cause not full, the court may order it filled from the bystanders, but after the selection of the jury has begun and this number becomes reduced so there are not twelve jurors to place in the box, the court then orders only enough to be selected from the bystanders to keep twelve men in the box, and need not keep

the original panel of twenty-four full. This, we understand, was the course pursued by the court, and was, in our opinion, the proper method.

Because of the error of the court, in overruling the challenge to the array of the petit jury, the judgment of the Circuit Court will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*