Spear, J.
(concurring).
It is always well to start with a clear conception of the real question at issue. In his investigation of the case the judge of the common pleas reached the conclusion that.the defendant was in a position *35 to l-aise the question of the constitutionality of the statute establishing’ a government for the city of Akron, and then, being of opinion that the act is unconstitutional, he sustained the demurrer to the indictment. Courts uniformly decline to consider the alleged unconstitutionality of an act of the g’eneral assembly unless it becomes necessary to a disposition of the case before them. The first inquiry is, therefore, as to the right of the defendant to make the question of the constitutionality of the statute under review. If he cannot be heard to raise that question then the issue of constitutionality is not before us; meantime it is neither conceded to be unconstitutional, nor contended that it is not. Can he make the question? This inquiry will be answered when it has been determined whether or not the city commissioner of Akron is an officer. If he is, within the meaning- of our law, an officer, the exact extent or character of his title will, it is believed, prove of but little consequence, for the charge is that of attempting to bribe an officer.
The high estimate I entertain of the learning and ability of the trial judge, as well as the importance of the principle involved, has caused me to hesitate long before assenting to a conclusion contrary to the holding below, and it is only after careful examination of many authorities, and much reflection, that I have been satisfied to rest upon the conclusions announced in the majority opinion; and for the above mentioned reason I have preferred to express my own views on the subject. A reference to some of those authorities will prove instructive.
McKim v. Somers, 1 Penna., 297, involved the admissibility of a deposition taken before a justice *36 whom the objecting party alleged and sought to prove had, prior to the taking of the deposition, moved from the county and thereby vacated his office. The court held the evidence not competent on the ground that whenever a person has color of authority, and acts under a commission from the appointing power, but which it may be alleged has been forfeited, the validity of the commission cannot be examined in a Suit in which he is not a party. “If a person,”observed the court, “usurp an authority to which he has no title, or color of title, his acts would be simply void; but a colorable title to an office can be examined only in a mode in which the officer is a party, and before the proper trib unal. ’ ’
The People ex rel. v. Bangs, 24 Ill., 184, was a quo warranto to test the title of the defendant to the office of circuit judge. The constitution gave authority to the general assembly to increase the number of circuits, and in such case, the number of judges, but the assembly undertook to provide for an additional judge without creating an additional circuit, and Judge Bangs was elected, Commissioned and entered upon his duties as judge. Judgment of ouster was entered, the court holding that the portion of the law which provided for the election of a circuit judge was not authorized by the constitution and the election itself was void, but it gave the judge color of office, and his acts were as valid as if the law had been constitutional. The syllabus reads: “Though a judge elected under a law not authorized by the constitution, shall be ousted because he is not an officer cle ju/re, yet his acts colore officii will be valid. ”
The People ex rel. v. Weber, 86 Ill., 283, was a petition for a writ of mandamus by one Sullivan, *37 claiming to be a city treasurer, to compel a collector of taxes to pay him taxes collected belonging to the municipality. Sullivan’s title rested upon an alleged appointment by the mayor; This the court held to be invalid, and the writ was refused. It is held in the syllabus: “Where one claims rights as an officer, by virtue of his office, he must show that he is legally entitled to act, — that he is an officer de jure as well as de facto. The acts of an officer deju/re are valid and effectual everywhere when within the limits of his authority; but the acts of a de facto officer are valid only so far as the rights of the public, and of third persons having an interest in such acts, are involved. * * * The title of a defacto officer cannot be inquired into in a collateral way between third parties, but it may be inquired into where he is suing in his own right as an officer.”
In Leach v. The People ex rel., 122 Ill., 420, one paragraph of the syllabus is as follows: “The legislature passed an act which proved to be in violation of the constitution, whereby the management of the affairs of a county acting under township organization was attempted to be taken from the supervisors of the several towns, and vested in a board of supervisors consisting of only five members, instead of fifteen, as before, to be elected in five districts, and hold their offices for four years. Supposing the act to be a valid enactment, such board of five were elected, and for a time acted without question, as the legally constituted tribunal having charge of the county affairs: Held, that their acts were valid and binding as those of defacto officers under color of office.”
Brown, Treas., v. O' Connell, 36 Conn., 432, was an action of debt on a recognizance given in the police *38 court of Hartford. The constitution provided that all judicial officers should be appointed by the general assembly. That body, by a statute, undertook to authorize the appointment of a judge of the police court by the common council. The supreme court held the appointment void, but that the appointee “was a judge defacto, and that a recognizance entered into before him in the police court for the appearance of a prisoner was valid and binding.”
■Judge Van Vleet, in his work on Collateral Attack, p. 33, remarks: “If it is necessary, in order to guard the rights of the public, to hold the acts of an actual although unlawful incumbent of a judicial office valid, as being done by an officer de facto, then a fortiori is it necessary to hold an actual judicial tribunal, erected under the forms of law, sustained by the power of the state, and settling rights and titles, a tribunal de facto.”
And, as conclusion from divers authorities cited, the same learned author observes on page 51: “The de facto character of the officer is not impaired because he was appointed bj^ virtue of a ' void statute. ' Thus, a'judge appointed by the governor, or a city council, or transferred to another district; or a probate clerk, or district attorney,' appointed by authority of an unconstitutional statute; and county officers elected in a new county before the law organizing it could take effect, are all officers defacto.
See also Burt v. Railroad, 31 Minn., 472; Morris v. The People, 3 Denio, 381; The State ex rel. v. Choate, 11 Ohio, 511; Same v. Alling, 12 Ohio, 16; Taylor v. Skrine, 2 Treadw., 696; Case v. The State, 5 Ind., 1; Creighton v. Piper, 14 Ind., 182; Plymouth v. Painter, 17 Conn., 585.
*39 Smith v. Lynch, Treasurer, 29 Ohio St., 261, was an action to restrain the collection of a tax assessed by the board of health of the village of West Cleveland upon the land of plaintiff for the expense of removing a nuisance therefrom. The plaintiff claimed that the board was not a lawful board because the ordinance of council creating it was not read on three several days, nor were the yeas and nays of those voting recorded, nor did a majority of members vote for suspension of rules as required by statute; that they acted ’without authority, and the tax was therefore illegal. The persons claiming to be such board were the only persons claiming to be actinjg as such, and they were generally and publicly known and acknowledged as such at the time of the transaction. The court held that the requirements of the statute as to the manner of passing the ordinance were mandatory. Nevertheless, the board was a board de facto, and whether it was a board de jure was immaterial. It was claimed in argument that the case was one where there was no office to be filled. But the court held that “the statute (66 Ohio Law, 200) creates the office. It authorizes the council to establish the board, and to fill it by appointment. True, until the council act in the premises, it is a mere potentiality in their hands ; yet it is none the less an office, known to the law, and provided for by law. * * * It is enough that the office is one provided for by law, and that the parties have the color of appointment, assume to be and act as such officers, and that they are accepted and acknowledged by the public as such to the exclusion of all others. Such was the case here. There was both the color and fact of office.
*40 Turning to the statute referred to, we find that it simply provides for the composition of a board of health, and defines its powers, duties, etc., “whenever the council of any city or incorporated village shall establish a board of health.” No such board can exist until it is so established. Direct authority to establish such board is given by section 1622, Revised Statutes, paragraph 24. When, therefore, the court says that such board is “an office, known to the law, and provided for by law,” no more is meant than that provision has been made by law for the establishment of such an office. No one would pretend that the statute created the particular board in question.
And, in the same sense, is not the office of city commissioner one which the law has provided may be established? Is the “potentiality” lodged in the general assembly by the constitution, by the general grant (article 2, section 1), and by article 13, section 6, in the words: “The general assembly shall provide for the organization of cities and incorporated villages,” etc., any less potent in the constituting of municipal offices generally than is the “potentiality” lodged in the council by act of the general assembly to create a particular office ? And where the council, attempting to act under such authority, violates the fundamental law in such way as to fail to clothe its appointee with a good title to the office, and yet, because it possessed power to do the thing lawfully, and because its appointee has entered upon and is performing its duties to the exclusion of all others and to the acceptance of the public, this court says there being both color of office and fact of office, that the appointee is an officer de facto. Shall we now sajr in this case, where is the most *41 abundant authority in the general' assembly to create the office, and an attempt to do it, and the officer has entered upon and is performing the duties to the exclusion of all others and to the acceptance of the public, yet because of a failure to observe the fundamental law by the general assembly, if there be such failure, there is no color, and no fact, and henee no de facto officer, but he is simply an intruder and a usurper?
No question is made as to the regularity of the proceedings by which the board of city commissioners was appointed. Every legal formality was observed. The objection urged is that there was no power in the officers who appointed, to make the appointment in any manner, however regular. This is sufficiently answered, we submit, if there was color of authority.
As before stated, the ground upon which acts of defacto officers are sustained is that of public policy. But it is insisted that this is a criminal case and hence a different public policy should prevail. Many courts have thought differently.
In State v. Carroll, 38 Conn., 449, the prisoner had been found guilty of libel and breach of the peace by the city court of New Haven. Carroll’s complaint was that the person acting as judge was not such, having been called in to take the place of the judge by the clerk acting under an unconstitutional statute. The court, applying the general rules as to the effect of color and of fact, in an opinion of marked ability and learning by Butler, C. J., held that “the acts of ah officer appointed by and acting under and pursuant to an unconstitutional law, and performed before the unconstitionality.of the law has been judicially determined, *42 are valid as respects the public and third persons, as the acts of an officer defacto.”
In Mapes v. The People, 69 Ill., 523, a liquor prosecution, objection was made by defendant that the jury was an illegal body because drawn by an unauthorized person, one Lee, who, although authorized to perform other duties as clerk was not empowered to draw juries. The court held that whether Lee was an officer de jv/re was not material. He was an officer defacto, in possession of the office, performing its duties, and until he was in some direct way adjudged to be without authority, his official acts must be regarded as valid.
In Clark v. The Commonwealth, 29 Pa. St., 129, the prisoner had been convicted of murder in a court, the judge of which was exercising functions in a county attached to his district subsequent to his election, and the contention of the prisoner was that the act of the legislature by which such addition was attempted to be made was unconstitutional. But the court held that, the question could not be raised collaterally,’ that the judge was a judge de facto, and, as against all but the commonwealth, a judge de jure. The murderer- was hanged.
In Campbell et al. v. The Commonwealth, 96 Pa. St., 344, the prisoner had been convicted in Fayette county of arson in burning a dwelling house and other buildings. Two associate judg-es, not learned in the law, but who had been elected by the people of the county and commissioned, sat with the president judge and participated in the trial and sentence. The validity of their title to the office, and hence of the composition of the court, was questioned on the ground that, under the constitution of 1874, and subsequent legisla *43 tion, the people had no power to elect associate judges in Payette county. It was held “that they were judges de facto, and as against ail parties but the commonwealth they were judges de jure, and having at least a colorable title to those offices their title thereto could not be questioned in any other form than by quo wa/rranto at the suit of the commonwealth.” And the burners of dwelling houses went to the penitentiary for eight years. At a subsequent term, in an action in quo warranto, brought by the attorney general, the associate judges were ousted. ■
Of like import was the holding in Coyle v. The Commonwealth, 104 Pa. St., 117; and the murderer was executed.
In The State v. Brooks, 39 La. An., 817, the defendant had been convicted of manslaughter. The person killed was one Allen, an acting constable, who, armed with a warrant was in the act of seizing Brooks’ property at the time of the homicide. The defendant sought to prove that Allen had not been legally appointed and was not a legal constable. This proof was rejected. The ruling was affirmed. The court quote with approval, language of the court in an earlier case, that: “We do not desire to be understood however, as intimating that a party charged with crime can be heard to raise an issue that the ministerial and other officers of court, actually and defacto, acting as such, have no right to such offices. We should never get a criminal tried at that rate. We would, commence with a kind of collateral quo loarranto as to the judge, and then go on down through the official roster of the court. ’ ’ The manslayer went to the penitentiary for fifteen years.
*44 See also, Sheehan’s Case, 122 Mass., 445, and cases there cited; State v. Bloan, 17 Wis., 521; In re Ah Lee, 5 Fed. R., 899; Smurr v. The State, 105 Ind., 125; Angell & Ames on Corps., p. 58, note.
Regarding the respect which is to be paid to officers de facto Mr. Bishop, in his New Criminal Law, vol. 1, p. 284, observes: “The criminal law will not justify a person in resisting an arrest by an officer de facto on the ground that he is not such de jure. Other methods of testing the right are open. Indeed it would be little less than a breach of the peace by the court itself to permit men to try, 'in pais, the titles of constables and sheriffs, by beating them over the head and raising a riot. ’ ’ And by Prof. Wharton, in his work on Criminal Law, section 1572$, it is observed: “It has been already seen that on an indictment for resisting an officer, his title is not at issue when it appears that, at the time in question, he was a de facto officer, i. e. the recognized official representative of the government actually in power. That is what is called color of title.”
Ex parte Strang, 21 Ohio St., 610, was a proceeding in habeas corpus in the probate court reviewed in this court. Strang had been convicted in the police court of Cincinnati and was held by the chief of police under a mittimus requiring his conveyance to the work house. His ground of release was that he had been tried and convicted before one Carter, who was not the police judge, •but an appointee of - the mayor under an unconstitutional statute, the police judge being at the time ill and absent from his post. This court affirmed the judgment, holding: “That assuming (without deciding the question) the power of appointment thus conferred on the mayor to be un *45 authorized by the constitution, yet the person acting under such an appointment, would be a judge defacto;” and that “the acts of an officer defacto, when questioned collaterally, are as binding as those of an officer de jure. To constitute an officer de facto of a legally existing office it is not necessary that he should derive his appointment from one competent to invest him with a good title to the office. It is sufficient if he derives his appointment from one having colorable authority to appoint; and an act of the general assembly, though not warranted by the constitution, will give such authority. ”
In the consideration of the case the police court is treated as one of the courts inferior to the supreme court, which, by the constitution, the general assembly is authorized to establish, the judges of which are to be elected by the people,, and the acting police judge was regarded as appointed to hold the police court, and to exercise all the jurisdiction pertaining thereto. So that the inquiry was not into the jurisdiction of the court, but an inquiry into the right of Carter to hold the office.
The case illustrates the proposition that color of authority to appoint is sufficient to clothe the appointee with color of title to office. And if this be so, will not an act of the general assembly, which purports to authorize an inferior body to appoint to office give color of authority for such appointment where the power of the general assembly over the subject is unquestioned, and the only criticism is in the manner of its exercise? The constitution recognizes municipal corporations, and authorizes the general assembly to organize them and adopt methods by which they may be provided *46 with officers for their government. The office in question in the case at bar is one which may be so provided; in effect, therefore, the constitution creates ■ the office. Not this particular board, but boards generally, and such boards may become as essentially a part of the city government as is the police court, or any other instrumentality. It will be noted that the holding is in square contradiction of the maxim, often repeated in the text books and by judges, that where there is an officer dejw-e in the office there is no room for an officer defacto-, that both cannot exist at the same time. Judge Straub had not vacated the office; he was still in occupancy of it, drawing the salary, and armed with all the power; notwithstanding which the decision holds Carter to be a judge de facto. We emphasize this because it shows that maxims of text books are not to be implicitly relied upon, and because it shows to what length the court was inclined to go in order to maintain the acts of one in the exercise of functions of an office authorized by statute.
It is not here assumed that there is not disagreement among the authorities. There is. Perhaps, Norton v. Shelby County, 118 U. S., 425, is most relied on as sustaining the contrary-doctrine. In that case the legislature of Tennessee had undertaken, by statute, to constitute for the county of Shelby a board of commissioners to be appointed by the governor, and clothe it with all the powers and duties then possessed by the quarterly court of the county, composed of the justices of the peace who had been elected by the people. This county court was one of the institutions of the state, recognized in the constitution. County commissioners were wholly unknown to the consti *47 tution, and theretofore, to the laws. There was no acquiescence by the justices or the people; on the contrary, there was immediate and continued public opposition, by suit and otherwise, on the part of the justices and others until the final disposition of the case. Meantime, in the face of the opposition and the litigation, the board subscribed to stock and issued railroad bonds of the county to the amount of about $29,000, and the liability of the county on these bonds was the subject of the suit. It must be apparent at a glance that we have before us no such case. In that case there was, according’to the holding’ of the supreme court of Tennessee, no power in the legislature to authorize the appointment of county commissioners with such powers, by any form of statute, while in our case the power to create a board of city commissioners for Akron is unquestioned, and, if the proper classification has been prescribed no one doubts that it is a board de jure. As against protest and objection from the start in the Tennessee ease, we have, in our case, universal assent and acquiesence on the part of everybody for years. But it is insisted that the declarations of law given out by the court, irrespective of the judgment rendered, control this case. Do they? It is there said: “An unconstitutional act is not a law; it confers no rights; it imposes no duties; it.affords no protection; it creates no office; it is, in legal contemplation, as inoperative as thoug’h it had never been passed.” It is not necessary to question the aptness of this language as applied to the Tennessee case, but when it is sought to apply it to the situation in this state, and tó • our case, we think it opposed by the better authorities and the better reason. All legislative authority is vested *48 in our general assembly. .That body enacts the laws. It is just as much its duty to observe the constitution as it is the duty of any other branch of the government. The presumption is, as declared in Railroad v. Commissioners, 1 Ohio St., 77, and no where disputed, that in the enactment of laws they heed .that duty. To say, then, that a statute which, by all presumptions, is valid and constitutional until set aside as invalid by judicial authority, cannot, in the meantime, confer any right, impose any duty, afford any protection, but is as inoperative as though it had never been passed, is at least startling. To say that a statute which purports to create a constitutional office, duly enacted by our general assembly, and duly promulgated, enjoins no duty of respect or obedience by the people, and affords no corresponding right or protection, and that all who undertake to enforce its demands do so at their peril, and at the risk of being deemed trespassers and usurpers, in case it shall be finally decided to be unconstitutional, by a bare majority, perhaps, of the court of last resort, no matter what public necessities existed for its enforcement, nor. what public approval and acquiesence there may have been, nor for how long a term of years, and no matter how many holdings of intermediate' courts there may have been sustaining its constitutionality, is to invite riot, turmoil and chaos. It is not the law in Ohio.
If the people may reasonably be expected to have sufficient knowledge of the constitution so that when called upon to deal with one exercising the functions of an office they may intelligently inquire far enough to ascertain whether the office be one which the constitution creates, or gives authority to the general assembly to create, it eertainyl *49 is not reasonable to expect the people to be wise enough to determine for themselves, and at their peril, whether the general assembly, in its efforts to establish an office which it has the most unquestioned right to establish, has observed all the requirements of the constitution.
It is sought to dispose of this case by use of the phrase that there can be no officer de facto unless there is an office to fill. The proposition begs the question. The obvious answer is that there is an office to fill whenever our law-making power, exercising its authority to create a constitutional office, by a duly enacted and promulgated statute, ordains there shall be such office, and it remains an office until the act is repealed or held unconstitutional by a court of competent authority, in a proceeding to which the one holding the office is a party, who, in the meantime, his election or appointment being regular, and the public acquiescing in his discharge of the duties, is an officer whose title can be questioned only by the state itself.
Staight v. The State, 39 Ohio St., 496, has not been overlooked. The holding of the court, given in the syllabus, is, in substance, this: Perjury cannot be assigned of an oath taken before one acting as a deputy clerk of the probate court, holding without new appointment, during the second term of the judge ■ appointing him, ■ for the reason that the oath is not administered by lawful authority.
The position of deputy clerk is not, in the constitutional sense, an office. At common law the officer and his deputy filled but a single office. By statute the probate judge is ex-officio clerk of his own court; the deputy is appointed by him, and *50 can be neither appointed nor removed by any one else, and the acts of the deputy are the acts of the principal. (Warwick v. The State, 25 Ohio St., 21.) Petit, the one acting as deputy when the oath was administered to Staight, had received no appointment under the judge’s second term, and had taken no oath. Even had there been an office to fill, he lacked color of office, and in no respect could be regarded an officer de facto. It would appear that the case has no important bearing upon the present contention.
But it is insisted that the title of the officer is an essential ingredient of the crime, and that an unconstitutional act cannot create a material element of a crime. This begs the question by assuming as though proved 1, that an act of our general assembly, duly enacted, purporting’ to establish an office which the assembly has power to establish, may be treated as a nullity before it has been declared invalid by a court of competent jurisdiction in a proper case; and 2, that the question of constitutionality can be raised in the manner attempted by this defendant. We have already undertaken to give some reasons why these propositions are not tenable. It may be added that considerations of justice, the uniformity of administration of law, and public policy alike forbid assent to them. In the old days when persons accused of crime could have no compulsory process for witnesses, could have no counsel, could not testify in their own behalf, and were subject to other disabilities, it was usual for courts to resort to technicalities, and sometimes trivialities, to aid the prisoner. But that condition has passed away and courts are not now so willing to favor shifts invented to get guilty men off, and the sub *51 stance of things is more regarded. By statute it is made the duty ,of our courts to disregard defects and imperfections in indictments which do not tend to the prejudice of the substantial rights of the defendant upon the merits. How is the corruption, the guilt of one who attempts to pollute the fountains of justice by bribing its acting officers, and thus cheat his neighbors and the community, any the less substantial, or the state’s case against him any the less meritorious, because it may turn out that the officer’s title would not stand the test of a quo warranto ? Such strictness is not observed in some other branches of criminal law. As against the thief or the burglar, a possessory title is good. The state isn’t required to prove absolute ownership, or a fee-simple. Would a manslayer be heard to defend that his victim had been born into the world lacking some quality of manhood, mental or physical? If the acting commissioner be good enough officer to be bribed ought he not to be held good enough officer to answer the designation of the statute in order to punish the briber ? It is insisted that to convict the defendant in this case would override the maxim that an element of a crime cannot be supplied by estoppel. Let us see. Could the commissioner, had he accepted the bribe, be heard to say he was not an officer? Surely not. Wherein lies the difference? Why should there be a difference? Why should the venal scoundrel who, dealing with the other as an officer, invents the wickedness and tempts him be let off by a mere technicality? The statute which prescribes punishment for accepting a bribe also prescribes punishment for giving it. What a travesty on justice would be presented by the judgment of a court, acting on the *52 same facts, and applying the same criminal statute, which says to the tempted officer, you will go to the penitentiary, and to the wily fowler who spread the net, and gathered in his grasp the ill-gotten gain, you may go free. Or, suppose a defendant convicted in the police court before a judge de facto, as in the Strang case, is sentenced to a fine and a term in the work house. He cannot be heard to defend that the law providing for the appointment of the acting judge is unconstitutional. But, according to the theory of the defense in this case, if the prosecuting witness has sworn falsely in order to effect a conviction, and is prosecuted, he may raise the question, and perchance on that ground escape punishment for his perjury. If such failures of justice are a necessity under our jurisprudence is it any wonder that inconsiderate people sometimes show their contempt for its administration by trying to take the law into their own hands ?
It is suggested that the general assembly might have provided that an attempt to bribe an acting officer should be a crime, but that it has failed to do so. But is not that exactly what has been done? The same authority which provides punishment for attempting to bribe an officer in one act has said in another act that a city commissióner is an officer. Treating the acts as in pari materia, and construing them together, what is lacking?
It seems to be conceded that, on grounds of public policy, one occupying an existing de jw^e office should be regarded an officer defacto, although his appointment thereto is pursuant to an unconstitutional statute. Does any reason exist why the same public policy will not require that one occupying, with general acceptance, an office which the general assembly has power to create, should like *53 wise be adjudged an officer de facto, although in the exercise of the power by the assembly, constitutional requirements have not been observed? If any such reason does exist certain it is that none has been adduced; but instead the maxim that there can be no de facto officer unless there be a de jure office is invoked! Summed up in brief, the substantial ground of objection urged against the state’s position is that it antagonizes well-known maxims of the law, and is illogical. Maxims, like definitions, have their uses; but it is not wise to rely absolutely on them, for they are often inexact. A discriminating writer has said: ‘ Maxims are attractive because they seem to offer the conclusions of wisdom in a portable form, but legal principles are not capable of definition after the fashion of the exact sciences, because the law is not a science in the scientific sense, and the attempt to express its principles in rules of mathematical precision misleads oftener than it enlightens.” It may be added that maxims and aphorisms are among the tritest, not to say cheapest, weapons of legal contests. If one may' annihilate an opponent’s position by attacking it with a maxim, or a phrase, the conquest is easy, for the legal quiver is full of them. It is equally easy to assume, as proven, contested propositions, and from them advance with confidence to desired conclusions. This is logic, perhaps, but there are times when logic fails. The law is intended for practical use. By the act in question local governments are erected in the cities coming within the description, and the necessary officers are provided to carry on the government in those localities. On certain officers named is imposed the duty to put the law in operation by appointing *54 the commissioners. As before stated, the law is • presumed to be constitutional. Should those officers be expected to go into an inquiry to demonstrate that they have no power to do what the statute directs them to do? At all events, they raise no question but proceed with the duty, and fully equipped city governments result, which the community recognizes, and the property rights of the people, and public order as well, depend upon the acts of such commissioners in the performance of duties imposed by statute. And yet we are told that these proceedings, whenever questioned collaterally, are to be adjudged void, because the statute “creates no office, imposes no duty, confers no right, affords no protection, and is as inoperative as though it had never been passed.” The mischiefs and troubles which would follow such a result are against reason, and are so apparent that no enumeration of them is needed.
It would seem plain that the proceeding to challenge such a legislative act should be a direct one to which the officer is a party, so that the judgment of the court may have the direct effect of settling the question permanently, and for the whole world, in such manner as that it could not afterward be made the subject of judicial investigation.
Justice to the judge of the common pleas makes it proper to add that (as appears by his opinion reported in vol. 3, Ohio Legal News, p. 34), he was disposed to adopt, as matter of personal judgment, the view “that the office so created, as long as acquiesced in, could not be impeached by persons recognizing its existence for their benefit until the same had been declared invalid by competent authority, ’ ’ but, inasmuch as the matter would be *55 brought to this court however decided in the common pleas, he thought it more expedient to sustain the demurrer, following the doctrine of Norton v. Shelby County, supra, as in that event, if concurred in by the reviewing court, that determination would. end the case, while if held otherwise by this court the ease would go back for correction of errors; which latter inference, it is here suggested, the learned judge would not have drawn had his attention been called to State v. Granville, 45 Ohio St., 264, where it is held that the effect of sustaining exceptions is not to reverse the judgment below, but simply to determine the law to govern similar cases.