## JAMES P. BARLOW *et al.*

*v.*

## JOSEPH R. STANDFORD *et al.*

1. DE FACTO OFFICER—*his acts worthy of credit.* An officer de facto is one who has the reputation of being the officer he assumes to be in the exercise of the functions of the office, and yet is not a good officer in point of law. The official acts of such an officer are always regarded as worthy of full faith and credit.

2. SERVICE—*amending return at subsequent term.* An amendment to a return upon a summons made at a subsequent term, upon notice to the adverse party, by the officer who made the service in the first instance, in

accordance with the facts from his personal recollection, by leave of court, is rightfully and properly made, and if the service, as amended, shows the court had jurisdiction of the person of the defendant, it could proceed to judgment.

3. EQUITABLE TITLE—*will defeat naked legal title on bill for partition.* Where a mortgage was foreclosed, and the decree provided that, on default of payment of the amount found due, the equity of redemption should be barred, and, default being made, the property was sold as directed by the decree, and no deed made, but the fact reported to the court, and a decree entered that the title to the property be vested in the purchaser, it was *held,* that such an equitable estate vested in the purchaser as to preclude the heirs of the mortgagor from asserting title by bill in equity for a partition of the land.

4. PURCHASERS—*under decree, protected though decree is afterwards reversed.* Purchasers under a decree of a court of equity, whilst it is in full force, and before any writ of error has been prosecuted, and without any notice whatever of claims and equities of the parties thereto, will be protected, notwithstanding the decree is afterwards reversed.

APPEAL from the Circuit Court of Crawford county.

Messrs. CREWS & HAYNES, for the appellants.

Mr. FRANKLIN ROBB, and Mr. E. CALLAHAN, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Both parties concede the title to the lands in controversy was in Enoch Willhite, in his lifetime. This bill is for the partition of the estate. Complainants, who are the heirs and grantees of heirs of Enoch Willhite, deceased, claim that he died seized of the lands, and that the title was in him; having come to them, they are endeavoring to maintain it. While, on the other hand, defendants insist they own the lands by a title acquired under a mortgage executed by Willhite in his lifetime upon them, in the year 1839, to secure a debt to the school fund.

In 1844, the mortgagees, by bill in the circuit court, foreclosed that mortgage, and, at the master's sale under the decree, the lands were bought in by the trustees of schools. Afterwards, the trustees, by quitclaim deed, conveyed the

lands to defendants Pearce and Standford. All the other defendants claim as grantees of them.

Since 1858 these lands have been, in one way or another, the subject of litigation. It was thought the description of the lands, as given in the mortgage, was too indefinite, and accordingly, in that year, the trustees of schools exhibited a bill, making the heirs of Enoch Willhite, deceased, parties, to correct the description, and for other relief. A demurrer interposed by the heirs was sustained, and the bill dismissed. That seems to have been the end of that litigation.

. In 1860, Zadock A. Pearce, joining with his wife, who was one of the heirs of Enoch Willhite, filed their bill, making all the other heirs defendants, in which it was alleged, Enoch Willhite died seized of the lands in controversy, subject to a mortgage previously given to secure a debt to the school fund, asking, among other things, for the sale of the lands, and after the payment of the debt to the school fund, that the remainder might be divided between the heirs. That bill was sworn to by Zadock A. Pearce. On the hearing of that cause, a decree was rendered in accordance with the prayer of the bill, and, at the sale under that decree, Pearce and Standford became the purchasers of the entire estate, which was sold *en masse* for the sum of $1000. At the June term, 1868, the decree in this latter case was reversed in the Supreme Court, and the cause remanded. But, in the meantime, Pearce and Standford had bought the lands from the school trustees, and, on the remandment of the cause, complainants obtained leave and amended their bill by setting up, substantially, the same facts as alleged by defendants in their answer to this bill, viz: that Enoch Willhite did not die seized of the lands; that the trustees of schools had previously, by the decree and sale in the foreclosure suit, obtained all the title that Enoch Willhite, in his lifetime, had, and they were then the owners. But complainants, at a subsequent term of court, dismissed their suit, and that was the end of that branch of this litigation.

No further litigation in regard to these lands was had until 1873, when the present bill was filed for partition.

Defendants Pearce and Standford, each of whom married one of the heirs of Enoch Willhite, were informed, before their purchase under the decree of 1860, on the suit of Pearce and wife against the other heirs, and before they bought the title of the trustees of schools, whatever it was, of the rights and equities insisted upon by complainants. Most, if not all, of the subsequent grantees of Pearce and Standford bought for full consideration while that decree of 1860 was in full force, and before any writ of error had been sued out in the case, but some of them had actual notice of the claims of complainants before buying.

Whatever title to these lands the trustees of schools acquired under the decree and sale under the mortgage, which it is conceded was the prior lien, passed by their deed to Pearce and Standford, and hence to their grantees. That decree and sale were in 1845, and before the death of Willhite, the mortgagor. Should it be determined that decree was valid, the sale thereunder would bar the equity of redemption that was in Willhite in his lifetime, and hence would bar the rights of all claiming under him. As a matter of course, the heirs could assert no rights that their ancestor could not.

One principal objection taken to that original decree is, the court had no jurisdiction of the person of defendant Willhite, by service of process or otherwise. The summons issued in that suit was served upon defendant Willhite by a deputy sheriff, on the 14th day of September, 1844. He was a deputy under the sheriff whose term of office had or was about to expire. His successor had been elected, and on the 12th day of September, 1844, he took the usual oath of office, and filed his bond, but it was not approved until eleven days thereafter. It seems the statute then in force required the newly elected sheriff to give the outgoing sheriff notice that he had qualified, and was ready to enter upon the discharge of the duties of the office. R. L. 1827, p. 374, sec. 12. No notice was given— at least it does not appear any was given. The fact the newly elected sheriff had taken the oath of office and presented his bond, does not seem to have been known either to the sheriff

or his deputies, for they continued to act as they had previously done. This is evident from the fact, process issued by the circuit clerk was given to them to be served, as was done in this case. Hence, it will be observed the deputy who served the summons was an acting officer under color of authority, and. according to all our decisions on that question, the official acts of a *de facto* officer are valid. An officer *de facto* is defined to be one who has the reputation of being the officer he assumes to be, in the exercise of the functions of the office, and yet is not a good officer in point of law. The official acts of such an officer are always regarded as worthy of full faith and credit. Any other rule would be disastrous to public interests. *Mapes* v. *The People*, 69 Ill. 523.

But the return of the officer upon the summons was itself defective, in not showing the manner of service. Leave was given by the court, upon notice to the adverse party, for the officer making the service to amend his return, so as to make it conform to the actual fact. That order, granting leave to amend the return, was, at a subsequent term of court, on motion of complainants, as it seems, set aside and held for naught. However, while that order was in force, the officer did amend his return upon the summons, and a copy, as amended, was given in evidence. As amended, the return shows the court had jurisdiction of the person of defendant, and the only question is as to the propriety of making the amendment. The authority of the sheriff or other officer to amend his return upon process, so as to make it speak the truth, has always been conceded to exist. *O'Conner* v. *Wilson*, 57 Ill. 226.

In the case at bar, the amendment to the return upon the summons was made upon notice to the adverse party, and was made by the officer himself who made the service in the first instance, in accordance with the facts from his personal recollection. This is exactly within the rule as declared in *O'Conner* v. *Wilson*, and we are aware of no reason why the return of the officer was not rightfully amended. Thus, it will be seen, the court had jurisdiction of the person of defendant and

the subject matter of the suit, and, therefore, could pronounce the decree it did.

On the hearing of that cause, the court decreed a strict foreclosure of the mortgage, and in case the sum found due was not paid within five months, that the mortgagor's equity of redemption should be forever barred. The money was not paid, and the special master advertised the property and sold it as directed in the decree. Upon the coming in of the report it was accepted, and the court ordered " that the title to said lands vest in said trustees," for the benefit of the parties interested in the fund. No deed was ever, in fact, made, but if a deed was indispensable to convey the legal title, nevertheless, an equitable estate vested in the trustees, which they could convey to Pearce and Standford, and that is sufficient to defeat the present suit.

Some of the grantees of Pearce and Standford, as we have seen, purchased while the decree of 1860, in *Pearce et al.* v. *Willhite et al.* was in full force, and before any writ of error had been prosecuted, and without any notice whatever of the claims or equities of complainants. Under the decision in *Wadhams et al* v. *Gay*, 73 Ill. 415, their interests, in any view of the case, will be protected and their titles held good.

The decrée of foreclosure, under which defendants deraign title, was rendered in 1844, and the sale under it was made in 1845, before the death of the mortgagor. Whatever irregularities may have existed in the decree and sale, could have been readily known to him upon the slightest inquiry, yet he made no effort to have either set aside or reversed. It is not claimed the mortgage indebtedness was ever paid, either by the mortgagor in his lifetime or his heirs since his death. As we have seen, these lands have been the subject of litigation in the various courts of the State since 1858, consequently the condition of the title must have been known since that date to the heirs now claiming the lands. More than thirty years have elapsed since the decree in that cause was pronounced, but, from that day to this, the heirs have made no offer to redeem the lands from the mortgage indebtedness, or to have

the decree and sale set aside. Evidence in the record tends to show the mortgagor, after the decree and sale, abandoned all claims to the property covered by the mortgage, and certainly, after the lapse of so great a period, and other interests have attached, his heirs ought to be regarded as having long ago abandoned all equities in the premises, if any ever existed in their favor. All that complainants now do is to assert a mere legal title to the property that has come to them by descent. They have not and do not now offer by their bill to redeem the lands from what they insist was an irregular sale. When these lands were sold under the decree in the foreclosure suit in 1845, they sold for nearly or quite all they were worth, and it does not appear any great profits could have been realized by redeeming them. Since then a portion of these lands have been subdivided and sold as village lots, and valuable improvements made upon them. Had there been no appreciation in the value of the property, it is hardly probable the heirs would be seeking to recover it at this late day.

It is meet there should be an end of the litigation concerning these lands, and the title thereto forever put at rest. To that end the decree will be affirmed.

*Decree affirmed.*

Mr. Justice Scholfield having, at one time, been of counsel in this case in the court below, took no part in its decision.