The People of the State of Illinois ex rel. John S. Rusch, Defendant in Error, v. Tina Worthman and Leona Coine, Plaintiffs in Error.

Gen. No. 32,430.

Opinion filed June 20, 1928.

LOUIS GREENBERG, SAMUEL E. PINCUS and A. PAUL HOLLEB, for plaintiffs in error.

Charles Center Case, Special State's Attorney, for defendant in error; Grover C. Niemeyer, of counsel.

Mr. Presiding Justice Holdom delivered the opinion of the court.

The defendants in this writ of error are of the female sex. They served respectively as a judge and a clerk of election in the 12th precinct of the 20th ward of the city of Chicago, at an election held on November 2, 1926. For misbehavior as such judge and clerk each of the defendants was on a finding of guilty of contempt of court sentenced to imprisonment in the common jail of Cook county, Illinois, for the term of one year from the date of commitment unless sooner discharged in due course of law.

The sole and only reason assigned or argued why the judgments should be reversed and defendants discharged from further imprisonment is the fact that they each are of the female sex. Inferentially were they of the male sex the judgments would be legally unassailable.

Counsel for defendants contend that under the statutes as they then and now exist women were not eligible for either judges or clerks of election, and consequently the county court has no jurisdiction to punish them for their misbehavior. In support of their contention they cite *People v. Barnett*, 319 Ill. 403. The *Barnett* case involved the right of women to serve as jurors, in which the court held that the legislative intent that controls in the construction of a statute, has reference to the legislature which passed the given act. Applying such rules of construction it is evident that when the legislature enacted the law in question in the *Barnett* case, which provided for the appointment of jury commissioners in counties having more than 250,000 inhabitants and imposing upon them the duty of making a jury list, using the words

"shall prepare a list of all electors between the ages of twenty-one and sixty years, possessing the necessary legal qualifications for jury duty, to be known as the jury list," the legislature intended the use of the words "elector" and "electors" as the same were then defined by the constitution and laws of the State, and stated "At that time the legislature did not intend that the name of any woman should be placed on the jury list, and must be held to have intended that the list should be composed of male persons only. In interpreting a statute the question is what the words used therein meant to those using them. * * * The word 'electors,' in the statute here in question, meant male persons, only, to the legislators who used it. We must therefore hold that the word 'electors' as used in the statute, means male persons, only, and that the petitioner was not entitled to have her name replaced upon the jury list of Cook county."

It is contended that such construction of the Jury Commissioner Act is equally applicable and binding in the construction of that portion of the Election Law, Cahill's St. ch. 78, ¶ 26 *et seq.* which provided for the appointment of judges and clerks of election, it being quite true that the legislators did not, when they passed the act, have in mind the appointment of other than males as judges and clerks of election.

Counsel for the People parry this contention with the argument that the defendants, if not *de jure* officers, were not such judge and clerk of election *de jure,* but that they were such officers *de facto,* and liable to be dealt with as for contempt by the county court. That the defendants voluntarily served as judge and clerk of election, respectively, is not denied. The question of their misbehavior in the discharge of their respective duties is not contested.

In *Chicago v. Burke,* 226 Ill. 191, it was held in effect that a person assuming an office is by that act estopped to deny his right to the office when charged with mis-

behavior in office, and that such rule is controlling in both civil and criminal proceedings. In the *Burke* case the city brought suit to recover moneys paid into the city treasury as security for any shortage that might appear in Burke's account as oil inspector of the city, and in passing on this proposition the court said:

"We do not know of any rule of law under which the complainant can reclaim the money deposited on the ground that the ordinance was void. Surely he cannot escape his liability to the city by impeaching his own title to the office and attempting to show that, in fact, there was no legal office of oil inspector."

In *People v. Newsome,* 291 Ill. 11, defendant was convicted of a criminal offense while he was acting as a judge of election and the conviction was sought to be reversed because the voting district in which he acted had never been established or the polling place fixed as required by law. In denying this contention the court said:

"In *People v. McCann,* 247 Ill. 130, the court, in discussing a somewhat similar question, stated (p. 143): 'But, as between himself and third parties, (the State in this case,) if the office * * * had a legal existence and plaintiff in error assumed the duties and discharged the powers and functions of the office he became a *de facto* officer, and cannot be permitted to deny his responsibility, while so acting, on the ground that he was not legally elected or appointed to said office.' That case is reported in 20 Am. Ann. Cas. 496, with a somewhat lengthy note at the close, in which the rule laid down in the opinion that a *de facto* officer is originally liable for his acts of malfeasance is supported by many decisions from other jurisdictions."

In *State v. Stone,* 40 Iowa 547, the court said:

"If one holds himself out to be an officer, or acts as an officer *de facto,* he cannot be heard to object that

he is not an officer *de jure,* because his acting in the office estops him to deny his right to it, even when indicted for malfeasance." (Citing Bishop on Criminal Law and Wharton on Criminal Law.)

There are many other authorities to a like effect. The defendants if not a judge and clerk respectively *de jure,* they were such officers *de facto,* because they acted in and discharged the duties of such officers.

We therefore hold that the defendants were estopped from denying that they were not amenable to discipline by the county court for their misbehavior while acting as *de facto* judge and clerk of election.

In *Graham v. People,* 135 Ill. 442, the question of whether defendant was a *de jure* or *de facto* officer was neither raised nor considered.

We will take judicial notice of the fact that women are still serving as judges and clerks of election and that women were judges and clerks in the late judicial election held on June 4, 1928. If there is any doubt as to the legality of women acting as judges and clerks of election and their being amenable to be dealt with for contempt by the county court for misbehavior in the discharge of their assumed duties, this case should be taken for further review to the Supreme Court so that that court of dernier resort may be given an opportunity to decide this most important question, because if women are not eligible to serve as judges and clerks of election, their appointments as such should be discontinued.

The judgments of the county court in this writ of error are affirmed.

*Affirmed.*

Wilson and Taylor, JJ., concur.