The People of the State of Illinois ex rel. George L. Millard, Appellee, v. William Hale Thompson et al., Appellants.

Gen. No. 33,127.

Opinion filed March 11, 1929.

SAMUEL A. ETTELSON and FRANCIS J. VURPILLAT, for appellants.

JAMES J. O'TOOLE, for appellee; MCMAHON & GRABER, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This cause is now before us on rehearing granted. The cause is one in which the relator Millard filed a petition for mandamus against the mayor, the fire commissioner, the civil service commission and the board of trustees of the firemen's pension fund of the City of Chicago, praying that the civil service commission be required to restore relator's name to the payroll of the fire department of the city and that the trustees of the pension fund be required to remove his name from the pension roll.

A demurrer was interposed to the petition by the defendants and overruled by the court. Defendants electing to stand by their demurrer, judgment was entered in favor of the relator as prayed. The question for decision is whether the court erred in overruling the demurrer.

The petition averred by way of inducement facts tending to show that the relator Millard on May 31, 1926, and long prior to that time, was on the payroll of the City of Chicago as a member of the classified civil service and as a fireman entitled to the protection of the Civil Service Law and other laws and ordinances applicable; that appropriations for his salary were duly made; that in February, 1926, relator became ill and unable to work on account of rheumatism or arthritis caused by hardships and exposures suffered by him in the line of his duties as a fireman, and that he was confined to his bed as a result of this illness up to May 31, 1926; that his disability was certified to the fire commissioner by the city physician; that on May 31, 1926, Connery, the then fire commissioner, notified Millard that his name would not appear on the payroll of the fire department after that date; that notwithstanding Millard's protest his name was removed from said payroll at that time without any charges being filed under the Civil Service Act, Cahill's St. ch. 24, ¶ 685 *et seq.*, and without inquiry as to whether his illness arose out of the discharge of his duties as fireman; that Millard was then, as aforesaid, confined to his bed; that he had a wife and three children to support and had no property or income other than his wages; that Connery falsely represented that there was no provision for carrying disabled firemen on the regular payroll of the department; that Millard relied on this representation of Connery and at his suggestion applied for a pension under paragraph 950, section 9, chapter 24 of the Statutes of Illinois, known as the Firemen's Pension Act, Cahill's St. ch. 24, ¶ 950.

The petition further averred that at that time section 1199 of article 7, chapter 29 of the Municipal Code of Chicago provided:

"Any member of the fire department receiving any injury or becoming disabled while in the discharge of his duties and by reason of or as a consequence of the performance of such duties as such member of the fire department, shall for the space of twelve months provided his disability shall last that time, or for such portion of twelve months as such disability shall continue, receive his usual salary."

The petition further averred that prior to its filing the relator made ·a demand on the defendants for restoration of his name to the payroll of the fire department; that on February 1, 1927, the relator recovered his health and has ever since been physically qualified to perform the duties and sustain the exposures required of one working in the fire department; that on November 16, 1927, prior to filing the petition, relator made a demand on defendants in writing for the immediate restoration of his name to the payroll of the fire department of the City of Chicago and to his office or position as first-class fireman and for the removal of his name from the list of pensioners of the City of Chicago, asserting in said notice that his purported removal from the payroll was violative of the Civil Service Act and the provisions of the Municipal Code, as above set forth, and that his inclusion on the pension roll or list of the City of Chicago was procured by coercion and duress and was violative of the Civil Service Act and chapter 29 of the Municipal Code of Chicago. This notice also stated that the relator intended to demand compensation for the time during which his name was left off the payroll.

The gist of the case set up in the petition is that the removal of the name of the relator from the payroll as fireman and the placing of his name upon the roll of the city as a pensioner was illegal, oppressive and void,

and brought about through the false representations of Connery upon which the relator relied.

Section 9 of the Pension Fund Act, Cahill's St. ch. 24, ¶ 950, provides:

"If any fireman of any such city while in active service or on leave of absence shall become and be so physically or mentally disabled as to render necessary his retirement from active service, said board shall order the retirement of such disabled fireman and he shall be paid a monthly pension equal to one-half the amount of salary attached to the rank which he may have held in such fire service at the date of his retirement: *Provided, further,* that the pensions so paid shall not exceed the sum of three thousand ($3,000.00) dollars per annum, nor be in any case less than six hundred ($600.00) dollars per annum. *Provided, however,* that no pension shall be allowed to any fireman who has been so physically or mentally disabled while on leave of absence without pay for more than thirty days during any year.

"If, after placing a fireman on the pension roll, the board shall become satisfied that such retired fireman has recovered from such physical or mental disability, said board shall order the suspension of the payment of his pension and that said fireman report back to the marshal or chief of the fire department of such city, who shall thereupon order the reinstatement of such fireman in active service in the same rank or grade that such fireman held at the time of his retirement. If any fireman of any such city receive any compensation or allowance from such city under and by virtue of the law known as the Workmen's Compensation Act or other similar Act, the pension herein provided for such employee shall be reduced by the amounts so received if they be less than the amounts of such pension, and if any employee receive a sum or sums as compensation or allowance in excess of the pension herein provided for such employee, he shall not receive any pen-

sion until after the expiration of the period of time during which pension payable at the rate herein stated would equal the amount of such excess sum or sums.''.

It is conceded by the parties that the ultimate power in legislation is with the State; that ordinarily and as a general rule in case of conflict between a statute of the State of Illinois and an ordinance of the City of Chicago, the statute must prevail. The power of the city is derived from the State, and the State may, when it wills to do so, assume the power theretofore granted to a municipality. *City of Chicago v. Burke,* 226 Ill. 191; *Lowenthal v. City of Chicago,* 313 Ill. 190. If the ordinance here in question is in conflict with the statute, it is of course invalid and the statute alone would be applicable. In such case the alleged representation of Connery was not false, but true, and the placing of Millard's name on the pension roll (unless in violation of some other statute) was not illegal but proper and justifiable.

Is there a conflict between this statute and this ordinance, or can the ordinance and the statute be construed as supplementary to each other? A comparison discloses that the subject matter of the ordinance forms the subject matter of a paragraph of the statute. This subject matter is disabled firemen in the service of the City of Chicago. The ordinance is by its terms applicable to a limited class of firemen, namely, such as are disabled in the discharge of their duties as firemen. The statute is broader and by its terms covers firemen disabled for any cause or reason, unless the disablement occurs while the fireman is on leave of absence for more than 30 days. As to time, the ordinance is limited to disablement for one year or less. The statute is unlimited in this respect. A further analysis discloses that the statute is limited to such firemen as are disabled to such an extent ''as to render necessary'' their retirement from active service. The ordinance is not so limited. It may, we think, reasonably be con-

strued to refer to all firemen of the classes therein described whose retirement has not been rendered necessary. In other words, the moment it appears that it is necessary for a fireman to retire, section 9 of the Pension Act, Cahill's St. ch. 24, ¶ 950, becomes applicable and supersedes any and every provision of the ordinance. The ordinance covers the cases of disabled firemen whose retirement has *not* been found necessary. The statute is applicable to all disabled firemen whose retirement has been found necessary. If we thus construe the ordinance as being limited to firemen whose retirement has not been found necessary, there is not and cannot be any conflict between the provisions of the ordinance and the provisions of the statute, each being applicable to a distinct and different class of disabled firemen. Upon reflection, such seems to be the proper construction and interpretation of the ordinance and the statute, and this interpretation removes the possibility of any conflict in the provisions of the same and therefore the ordinance is valid.

It was contended by the relator in his original briefs and in his petition for rehearing that the ordinance should be construed to cover only the cases of firemen injured or disabled in the discharge of their duties by reason of and as a consequence of the performance of such duties, while the statute should be construed to cover firemen whose disability did not arise out of or was not caused by the discharge of their duties. We held in the former opinion and now hold that there is no basis in the language of the statute for such classification or interpretation. Relator also then, as now, argued that this construction might be inferred from the language of section 9 of the Pension Fund Act, Cahill's St. ch. 24, ¶ 950, which in substance declares that if any fireman receives compensation or allowance from the city under the Workmen's Compensation Act "or other similar Act" his pension should be reduced

by the amount so received, if that should be less than the amount of such pension, and that if any employee receives as compensation or allowance a sum in excess of the pension therein provided, he should not receive any pension until after the expiration of the period of time during which the pension payable at the rate stated would equal the amount of such excess sum.

It was further argued then, as now, that this construction should also be inferred from a consideration of section 5 of the Workmen's Compensation Act as amended in 1923, Cahill's St. ch. 48, ¶ 205 (see Smith-Hurd's Ill. Rev. Stat. 1925, chap. 48, p. 1267), which provides in substance that an employee of a municipal corporation who is or shall be entitled to a pension or benefit for or on account of disability or death arising out of or in the course of his employment shall be entitled to receive only such part of such pension or benefit as is in excess of the amount of compensation recovered and received by such employee. We then said, and now hold, that such inference may not be justly drawn from the language of these statutes. Section 9 of the Firemen's Pension Act specifically directs the allowance which may be deducted shall be "by virtue of the law known as the Workmen's Compensation Act *or other similar* Act." Neither the Firemen's Pension Act nor the Workmen's Compensation Act can be construed as being similar to a municipal ordinance. A municipal ordinance is in its nature essentially different from a statute enacted by the legislature of a State.

Neither can the relator's further contention that his removal from the payroll of the fire department was illegal because in violation of section 12 of the Civil Service Act, Cahill's St. ch. 24, ¶ 697, be sustained. There are no violations of that act to be inferred from the facts set up in the petition of relator. The petition avers no facts from which a cause for removal of the relator could be inferred. A fireman transferred to

the pension roll at his own request cannot be said to have been removed within the meaning of section 12 of the Civil Service Act and that section of the act is not applicable to such a case.

Notwithstanding our construction of the statute and the ordinance as supplementary to each other, and notwithstanding our holding that the ordinance is valid as applied to a certain class of disabled firemen, it does not, in our opinion, necessarily follow that the petition sets up facts showing that the relator is entitled to the relief prayed, for the reason that when the relator's petition was filed on May 31 the applicability of the ordinance was ended and the statute alone thereafter became applicable. The petition does not aver that the relator's retirement was not necessary on May 31, 1926, and it therefore fails to show that the alleged statement of Connery, upon which the relator relied, was in fact false. It is therefore unnecessary to discuss the further point raised by the respondent that at any rate the relator was presumed to know the law and that there could be no misrepresentation in that respect. *Fowler v. Black,* 136 Ill. 363; *Williams v. Thwing Electric Co.,* 160 Ill. 526.

However this may be, we do not hesitate to hold that the petition is fatally defective in so far as it attempts to aver facts showing fraud, coercion and duress. For instance, it nowhere avers that relator did not have knowledge of the existence of the ordinance. It nowhere avers that the relator, upon discovery of the alleged fraud, asked for leave to withdraw his petition or refused to accept and retain the benefits conferred upon him by the granting of its prayer. A general allegation of fraud is not sufficient.

The relator, however, further contends that at any rate the judgment is right since the petition alleges that on February 1, 1927, relator recovered his health and has ever since been physically qualified to perform

the duties and sustain the exposures incident to service in the fire department. It is urged that since the demurrer admits this fact and the pension trustees are defendants to the petition, the trial court did not order them to determine the fact as to whether petitioner had recovered his health but that they elected and chose to admit that fact. Therefore, it is urged that under section 9 of the Pension Act, Cahill's St. ch. 24, ¶ 950, relator is entitled to reinstatement in the active service and it is urged that the judgment of the court that he be reinstated should be affirmed. In other words, having demanded reinstatement upon the theory that through fraud and violation of the law relator's name was removed from the active roll and placed on the pension list, and having demanded not only restoration but salary during the time his name was on the pension list, he also seeks (while retaining the benefits of his petition) to further recover upon the inconsistent theory that there was nothing illegal in the transaction. He cannot be permitted to thus blow hot and cold. The judgment entered upon the demurrer adjudicated relator's right on the theory of his petition, which was that he had been wronged. The judgment cannot now be sustained on the theory that he has not been wronged.

What was said in our former opinion we now repeat:

"We assume that upon request to the trustees they will investigate the facts as to the relator's present capacity to perform the duties of an active fireman. The petition fails to disclose such request."

For the reasons indicated the judgment of the trial court is reversed.

*Reversed.*

O'CONNOR, P. J., and McSURELY, J., concur.